UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO 03-CV-12249-DPW

| | |
|---|---|
| DONALD A. BRISSON,<br><br>       Plaintiff<br><br>v.<br><br>CITY OF NEW BEDFORD and NED K. LEDUC,<br><br>       Defendants | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NED LeDUC'S MOTION FOR SUMMARY JUDGMENT |

I.    INTRODUCTION

The defendant, a retired City of New Bedford police officer, Ned LeDuc has moved for summary judgment in this case arising out of the plaintiff's arrest for trespass on or about October 6, 2000. At the time of his arrest, the plaintiff, a licensed attorney, refused to leave the City of New Bedford Police Headquarters after being asked to do by Officer LeDuc, a crime punishable by arrest and imprisonment pursuant to G.L. c. 266, §120. The plaintiff claims that his arrest was made without probable cause and asserts claims against officer LeDuc for unlawful arrest, unlawful imprisonment, assault and battery, interference with contractual relations and violations of the plaintiff's civil rights, in particular his liberty interest.[1]

As will be described in detail in this Memorandum, the undisputed facts clearly establish that Officer LeDuc reasonably believed that he had probable cause to arrest the plaintiff, and to the extent that the plaintiff claims that he was privileged from arrest under the circumstances of this case, such privilege was not clearly established at the time of LeDuc's actions so as to

---

[1] The plaintiff has also asserted claims against the City of New Bedford arising out of New Bedford Police Sergeant Winterson's decision not to allow the plaintiff to enter the booking area of the police station. These claims, in which the plaintiff alleges that Sgt. Winterson's decision amounted to an unconstitutional custom or policy of the City, are addressed in a separate Motion and Memorandum filed contemporaneously herewith.

overcome his claim of qualified immunity. Therefore, for the following reason, Officer LeDuc is entitled to summary judgment as a matter of law.

II.     FACTS

The facts underlying this case are set forth in the Defendants' Joint Statement of Material Facts Not in Dispute Pursuant to L.R. 56.1, filed herewith.

III.    ARGUMENT

    A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law." Fed.R.Civ.P. 56(c). In order to defeat a summary judgment motion, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1171 (1st Cir. 1988). Under Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987), summary judgment is appropriate where the non-moving has the burden of proof and "fails to make a showing sufficient to establish the existence of an element essential to that party's case."

In paragraph 36 of the Complaint, the plaintiff claims that "[t]he act of the Defendant, LeDuc, although negligent or wrongful, also amount to unlawful arrest, unlawful imprisonment, assault and battery, interference with contractual relations and violations of the Plaintiff's civil rights, in particular his liberty interest." For the reasons discussed in the following sections, there is no dispute as to any material fact and Officer LeDuc is entitled to summary judgment as a matter of law.

B.     LeDuc did not Violate the Plaintiff's Civil Rights

Without specific reference to any constitutional provision, the plaintiff claims that LeDuc violated his civil rights, "in particular his liberty interests," ostensibly a due process claim. Complaint, ¶36. Where an alleged civil rights violation arises in the context of an arrest, however, the claim is properly analyzed under the Fourth Amendment. Westover v. Reno, 202 F.3d 475, 479, n. 4 (1st Cir. 2000). Under the Fourth Amendment, a warrantless arrest is proper if it is based on probable cause. Grant v. John Hancock Mutual, Life Insurance Co., 183 F.Supp.2d 344, 357 (D.Mass. 2002). "Probable cause is established with evidence demonstrating that 'at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the [arrestee] had committed or was committing an offense.'" Grant, 183 F.Supp.2d at 357; quoting U.S. v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997).

The plaintiff was arrested for criminal trespass pursuant to G.L. c. 266, §120, which provides in relevant part as follows:

> Whoever, without right . . . remains in or upon the . . . buildings . . . of another . . . after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon . . . shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment. . . . A person who is found committing such trespass may be arrested by a . . . police officer . . . .

In this matter, the undisputed facts clearly establish that Officer LeDuc had probable cause to believe that the plaintiff was trespassing. When the plaintiff entered the building, he approached the desk officer, Officer LeDuc, and asked if he could meet with Steven Furtado (Statement of Facts, ¶ 14). Officer LeDuc told the plaintiff that he would contact the booking Sergeant (Statement of Facts, ¶ 15). Moments later, Sgt. Winterson came to the area next to the waiting room and spoke with the plaintiff (Statement of

3

Facts, ¶ 19). At that point, Sgt. Winterson told the plaintiff that he could not meet with Mr. Furtado (Statement of Facts, ¶ 23). According to Officer LeDuc, the plaintiff raised his voice and continued to demand a meeting with his client (Statement of Facts ¶ 27). The plaintiff admits that after he was refused entry by Sgt. Winterson he was "getting frustrated" and was raising his voice (Statement of Facts, ¶ 28).

After receiving another phone call from Mr. Furtado, the plaintiff became increasingly frustrated and raised his voice even more than before (Statement of Facts, ¶ 29). At that point, Officer Sampson intervened and the situation began to escalate. According to the plaintiff, Officer Sampson told him to stand in the fucking corner[2], and he responded with "I ain't standing in no freaking corner for nobody." (Statement of Facts, ¶ 30). At this point, the plaintiff was talking even louder, and LeDuc stepped in (Statement of Facts, ¶ 31). Knowing that Sgt. Winterson had told the plaintiff that he could not meet with his client, LeDuc twice told the plaintiff to leave and warned that he would be arrested if he refused (Statement of Facts, ¶ 31). The plaintiff refused to leave and was placed under arrest (Statement of Facts, ¶ 32). At the time of the plaintiff's arrest, there were at least four other civilians in the waiting area, and Mr. Brisson's behavior was preventing Officer LeDuc from performing his duties as a police officer (Statement of Facts, ¶ 28). Specifically, the plaintiff's disruptive behavior prevented Officer LeDuc from addressing the needs of the other civilians in the entry area at the time, from completing paper work and from answering the phones (Statement of Facts, ¶ 28).

It is undisputed that the plaintiff remained in the building of another (the City of New Bedford) after being forbidden to do so. The only factual issue in dispute appears to

---

[2] This facts is undisputed for purposes of summary judgment only.

be the manner in which the plaintiff asserted his request to meet with Furtado.  The defendant claims that the plaintiff was loud, abusive and yelling (Statement of Facts, ¶¶ 27-31), and the plaintiff claims that he merely raised his voice in a frustrated manner (Statement of Facts, ¶ 28).  This dispute, however, is immaterial for purposes of summary judgment, because the arresstee's demeanor is not an element of the offense of criminal trespass.  See e.g. Commonwealth v. Lapon, 28 Mass.App.Ct. 681, 554 N.E.2d 1225 (1990) ("Although the defendant was not disorderly and did not use foul language, [he was guilty of trespass because] he was disruptive with store personnel, and refused to leave the store without a free bottle of Wisk.").  Accordingly, the only questions are: (1) whether the statute applies to the public waiting area of a municipal building; and (2) whether LeDuc was a person in charge for purposes of asking the plaintiff to leave.

With regard to the first issue, the criminal trespass statute applies to buildings owned by the state and municipalities.  Commonwealth v. Egleson, 355 Mass. 259, 262, 244 N.E.2d 589, 592 (1969).  Accordingly, "[t]he city had both a right and a duty to protect the building and its functions against any self-proclaimed need for an individual entry which could not, so far as it appears, benefit the public use in any respect."  Id.  The statute also applies to places of public accommodation.  Commonwealth v. Lapon, 28 Mass.App.Ct. 681, 683-684, 554 N.E.2d 1225, 1227 (1990) (super market); Gutierrez v. Massachusetts Bay Transportation Authority, 437 Mass. 396, 411, 772 N.E.2d 552, 565 (2002)(train station).  Under such circumstances, once the individual exceeds any invitation or license to remain on the premises, and refuses to leave after being asked to do so, he is committing a criminal trespass.  Lapon, 28 Mass.App.Ct. at 684, 554 N.E.2d at 1227.  With respect to places with limited access for members of the public, such as the

5

police station, a person with a legitimate purpose is protected from a trespassing charge for his entry onto that property solely to determine whether the person in control wishes to deal with him and for his passage off the property is he receives a negative answer. Commonwealth v. Hood, 389 Mass. 581, 590, 452 N.E.2d 188, 194 (1983). In this case, the plaintiff entered the police station for the purpose of asking to meet with his client, but he exceeded his right of access when he interfered with LeDuc's duties by loudly persisting in his demands and refusing to leave after being asked to do so (Statement of Facts, ¶¶ 28-31). Therefore, it is clear that LeDuc had probable cause to arrest for criminal trespass.

The second issue is whether LeDuc was a person in charge for purposes of asking the plaintiff to leave. An individual need not be the owner of property to have "lawful control" for purposes of asking an individual to leave. Rather, on numerous occasions, Massachusetts courts have held that an employee acting on the owner's behalf has sufficient "lawful control" for purposes of asking an individual to leave. See e.g. Hood, 389 Mass. at 590, 452 N.E.2d at 194 (defendants guilty of committing criminal trespass when they remained on property after being asked to leave by the owner's security officer); Commonwealth v. Wolf, 34 Mass.App.Ct. 949, 614 N.E.2d 679, 680 (1993) (defendants guilty of committing criminal trespass when they remained on property after being asked to leave by clinic employee). In this matter, LeDuc was acting on behalf of and for the benefit of his employer, the City of New Bedford. As part of his duties as the desk officer, he was required to screen visitors and regulate entry into the non-public areas of the building (Statement of Facts, ¶ 11). Therefore, LeDuc was a person in "lawful control" of the Station for purposes of ordering the plaintiff to leave.

Plaintiff was not immune from arrest for criminal trespass merely because he was acting as an attorney. The First Circuit Court of Appeals,

> emphatically reject[s] the notion that a law degree, like some sorcerer's amulet, can ward off the rigors of the criminal law. No spells of this sort are cast by the acceptance of a defendant's retainer. . . . attorneys cannot be relieved of obligations of lawfulness imposed on the citizenry at large. Acceptable notions of evenhanded justice require that [criminal statutes] apply to all persons, without preferment or favor. As sworn officers of the court, lawyers should not seek to avail themselves of relaxed rules of conduct. To the exact contrary, they should be held to the very highest standards in promoting the cause of justice.

U.S. v. Cintolo, 818 F.2d 980, 996 (1st Cir. 1987). On anther occasion, the First Circuit has stated that: "there is a point beyond which zeal becomes vexation . . . and steadfast adherence to a position transforms to obdurateness. Here, [the attorney's] judgment was clouded by her excessive zeal to the point that her performance became unlawyerly." Cruz v. Savage, 896 F.2d 626, 635 (1st Cir. 1990); quoting Cruz v. Savage, 691 F.Supp. 549, 556 (D.P.R. 1988). Accordingly, the First Circuit Court of Appeals, in Lowinger v. Broderick, 50 F.3d 61 (1st Cir. 1995), found that an attorney could be arrested for violating a criminal statute while demanding to speak with a client in police custody.

In this matter, it is clear that the plaintiff's excessive zeal clouded his judgment and caused him to run afoul of the law. At the point of his arrest, he had caused a confrontation with two police officers, after clearly and unequivocally being told that he would not be permitted to meet with his client (Statement of Facts, ¶¶ 23-31). Furthermore, the plaintiff's steadfast adherence to his position was clearly unreasonable in light of the circumstances known to him. The plaintiff knew that his client was not being held on criminal charges (Statement of Facts, ¶¶ 5-6) and that he was given access to his attorney by telephone (Statement of Facts, ¶¶ 12, 29). Furthermore, given the plaintiff's experience in representing criminal defendants, he should have known that Mr. Furtado had no constitutional right to counsel during the booking process United

7

States v. Shea, 150 F.3d 44, 48 (1st Cir. 1998)(no right under Fifth Amendment); Roberts v. State of Maine, 48 F.3d 1287, 1290 (1st Cir. 1995)(no right under Sixth Amendment), and that if any statements were made by Mr. Furtado after asserting his right to counsel, that those statements could not be used against him.  McNeil v. Wisconsin, 501 U.S. 171, 177 (1991).  Therefore, the mere fact that the plaintiff was acting in his capacity as an attorney, does not excuse his behavior or give him immunity from arrest for trespass.  Accordingly, Officer LeDuc is entitled to summary judgment as a matter of law as to the "civil rights" claims.

      C.      LeDuc is Entitled to Qualified Immunity

Pursuant to the doctrine of qualified immunity, public officials are shielded from civil rights claims predicated upon those officials' performance of discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  This inquiry is wholly objective, and the plaintiff must prove that "a reasonable public official could not have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct."  McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991).

In this matter, the plaintiff appears to claim some privilege from arrest based on the fact that he was attempting to represent a client that was being detained at the police station.  To the extent such a right exists, it was not clearly established at the time of LeDuc's actions.  To the contrary, in Lowinger v. Broderick, 50 F.3d 61 (1st Cir. 1995), the First Circuit Court of Appeals found that an attorney could be arrested for violating a criminal statute while demanding to speak with a client in police custody.  In Lowinger, the plaintiff's client was arrested by the Boston Police and taken to the district station where he was booked and detained.  At the time of the

8

arrest, the plaintiff was contacted and asked to represent the arrestee. A short time later, the plaintiff appeared at the district station, approached the desk officer, and demanded to meet with his client. At the time, the plaintiff had a small tape recorder, which the desk officer ordered him to stop. After a "heated discussion" the plaintiff was not permitted to see his client. Upon the mistaken belief that the plaintiff continued to tape the desk officer after being asked to stop, he was arrested for a violation of G.L. c. 272, §99(C)(1).

In assessing the Officer's claim for qualified immunity, both the District Court and the Court of Appeals found that, if the officer correctly perceived the facts, he had probable cause to arrest the plaintiff. Lowinger, 50 F.3d at 65, n. 6. There was no discussion of a privilege from arrest because the plaintiff was attempting to meet with a client in police custody, and the Officer's motion for summary judgment was granted on qualified immunity grounds. Lowinger, 50 F.3d at 66. Thus, given the First Circuit's holding in Lowinger, an attorney's right not to be arrested while attempting to meet with a client in police custody was not clearly established at the time of LeDuc's actions.

Even in the context of a garden variety claim for false arrest, LeDuc is entitled to qualified immunity unless his actions were "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." St. Hilaire v. City of Laconia, 71 F.3d 20, 28 (1st Cir. 1995); quoting Malley v. Briggs, 475 U.S. 335, 344-345, 106 S.ct. 1092, 1098 (1986). Thus, "the question the court must ask is whether another officer, standing in [the defendant's] shoes and having the same information [the defendant] had, might reasonably have come to the conclusion that he had probable cause to [arrest the plaintiff]." Hoffman, 973 F.2d at 986.

Even though both inquiries focus on the objective reasonableness of the officer's actions, the Supreme Court has made it clear that the inquiry into whether an officer had probable cause

9

to arrest for purposes of establishing a substantive violation of Fourth Amendment, and the inquiry into whether an officer reasonably believed that there was probable cause for purposes of qualified immunity, involve different standards of proof.  Saucier v. Katz, 121 S.Ct. 2151, 2152, 533 U.S. 194, 194-195 (2001); Atwater v. City of Lago Vista, 121 S.Ct. 1536, 1564, 532 U.S. 318, 367 (2001); both citing Anderson v. Creighton, 107 S.Ct. 3034, 3040-3041, 483 U.S. 635, 640-641 (1987).  Thus, the Supreme Court has held that where an officer correctly perceives all of the relevant facts, but has a mistaken understanding as to whether those facts establish probable cause, the officer will be entitled to qualified immunity.  See Saucier, 121 S.Ct. at 2153, 533 U.S. at 195 (discussing application in context of excessive force case).  It seems clear from these decisions that an officer is entitled to more latitude in evaluating reasonableness for purposes of qualified immunity than for purposes of substantive probable cause determination.

Whether the officer reasonably believed that he had probable cause for purposes of qualified immunity does not require a high quantum of proof, but only requires "the probability, and not a prima facie showing, of criminal activity . . . ."  Hoffman, 973 F.2d at 986.  Probable cause must "clearly" be lacking at the time the process is requested in order to impose liability.  Caiani v. Town of Walpole, 624 F.Supp. 311, 315 (D.Mass. 1985); quoting Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985).  Additionally, although court approval of a complaint and warrant does not serve as an absolute bar to the liability of the officer who made the application, deference must be given to a court determination of probable cause if there is a substantial basis for the finding.  Hoffman, 973 F.2d at 986.  Thus, if the officer sought the complaint and warrant in a merely questionable situation, the determination by the magistrate that process should issue will insulate the officer from a Section 1983 claim.  Briggs v. Malley, 748 F.2d 715, 719 (1st Cir. 1984); affirmed 106 S.Ct. 1092, 475 U.S. 335 (1986).

In this matter, even if probable cause were lacking, LeDuc's actions were not so unreasonable so as to defeat his claim of qualified immunity. LeDuc was faced with an escalating situation, that he reasonably believed required action to defuse. The plaintiff was clearly told that he could not meet with his client at the police station and he refused to leave after being twice told to do so (Statement of Facts, ¶¶ 23-31). The plaintiff admits that his voice grew louder with each demand (Statement of Facts, ¶ 28), and once the verbal confrontation with another officer Sampson, LeDuc had little choice but to arrest the plaintiff. LeDuc's actions were later affirmed by a neutral magistrate who, after a hearing, found that there was sufficient probable cause to issue a complaint (Statement of Facts, ¶ 35). LeDuc's actions were clearly reasonable in light of the facts and circumstances known to him, and if an attorney has a right not to be arrested under these circumstances, that right was not clearly established at the time of the plaintiff's arrest. Therefore, because LeDuc is entitled to qualified immunity, his motion for summary judgment should be granted as a matter of law.

D.    LeDuc is Entitled to Summary Judgment as to the State Law Tort Claims

In paragraph 36, the plaintiff asserts numerous state-law tort claims against Officer LeDuc, to wit: negligence, unlawful arrest, unlawful imprisonment, assault and battery, and interference with contractual relations. Although these claims arise solely out of state law, this Court should exercise supplemental jurisdiction since they derive from a common nucleus of fact and do not raise any novel or complex issues of state law. Vera-Lozano v. International Broadcasting, 50 F.3d 67, 70 (1st Cir. 1993); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966).

      a.      Negligence

Pursuant to G.L. c. 258, §2, LeDuc is immune from liability for allegedly negligent acts committed in the course of his duties as a public employee. Petricca v. City of Gardner, 194 F.Supp.2d 1, 4-5 (D.Mass. 2002). There is no dispute that LeDuc was acting in his capacity as a police officer on behalf of the City of New Bedford (Statement of Facts, ¶ 10-11; Complaint, ¶¶ 3, 11). Therefore, LeDuc is entitled to summary judgment as to the negligence claim.

      b.      False Arrest/Imprisonment

Under Massachusetts law, a police officer is immune from liability from suits for false arrest or imprisonment if the officer was acting in the good faith performance of his duties upon probable cause. Santiago v. Fenton, 891 F.2d 373, 386 (1st Cir. 1989) (interpreting G.L. c. 263, §3 and G.L. c. 231, §94A). In this matter, as described in detail above, it is clear that the LeDuc acted in good faith and in the performance of his official duties and that he acted upon probable cause to believe that the plaintiff committed the crime of trespass. Therefore, Officer LeDuc is immune from liability for false imprisonment, and is entitled to summary judgment as a matter of law.

      c.      Assault and Battery

Assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another. Sietins v. Joseph, 238 F.Supp.2d 366, 380 (D.Mass. 2003). The standard for determining whether the use of force in conducting an arrest constitutes assault and battery is the same standard for determining whether the use of force is excessive for purposes of the Fourth Amendment. Seitens, 238 F.Supp.2d at 380; quoting Dean, 924 F.2d at 369. The typical excessive force claim arises in the context of an arrest and involves physical contact and

injury to the arrestee. Aponte Matos v. Toledo Davila, 135 F.3d 182, 191 (1st Cir. 1998). Where no physical force was used, and where the plaintiff did not suffer any physical injury, the First Circuit found that no "Fourth Amendment violation at all [had] been stated, let alone one unreasonable enough to overcome official immunity." Aponte Matos, 135 F.3d at 191.

In this matter, it is undisputed that Officer LeDuc did not use any physical force in effecting the plaintiff's arrest. According to the plaintiff, when LeDuc told him he was under arrest, LeDuc simply motioned with his hand for plaintiff to follow him into a different area of the police station (Statement of Facts, ¶ 32). LeDuc never put the plaintiff in handcuffs, did not touch him, and there is no evidence of a physical injury (Statement of Facts, ¶ 32). Therefore, LeDuc is entitled to summary judgment as a matter of law on the assault and battery claim.

### d. Interference with Contract

To state a claim for interference with contract, plaintiff must prove (1) the existence of a contract or business relationship for economic benefit; (2) knowing and intentional interference with that contract or relationship; (3) improper motive or means; and (4) damages caused by the defendant's actions. See e.g. Netherwood v. American Federation of State, County and Municipal Employees, Local 1725, 53 Mass.App.Ct. 11, 21 (2001).

With respect to improper motive, bad faith cannot be imputed to a government official. Rather, the plaintiff must overcome the presumption of good faith action by government officials by articulating "specific allegations of bad faith and, if necessary, [by producing] reasonably particularized evidence in support of those allegations." Costa v. Immigration and Naturalization Service, 233 F.3d 31, 37 (1st Cir. 2000) (quoting United States v. Gertner, 65 F.3d 963 (1st Cir. 1995)). In this matter, there is not one scintilla of evidence to show that LeDuc was not acting in the good faith performance of his duties as a police officer. LeDuc never met Mr. Brisson or Mr.

13

Furtado and derived no personal gain from preventing the two from meeting (Statement of Facts, ¶ 37). Furthermore, because LeDuc's actions were based on probable cause, the plaintiff cannot show that he interfered with their contract through improper means. Finally, there is no evidence that the plaintiff suffered any financial harm as a result of LeDuc's actions (Statement of Facts, ¶ 40). Therefore, LeDuc is entitled to summary judgment as a matter of law on the interference with contract claim.

IV.    CONCLUSION

For the foregoing reasons the defendant Ned LeDuc's Motion for Summary Judgment should be allowed as to all claims set forth against him.

| DEFENDANT | DEFENDANT |
|---|---|
| NED LeDUC, | NED LeDUC, |
| By his attorneys, | By his attorney, |
| s/ Gregg J. Corbo | s/ Austin M. Joyce |
| _____ | _____ |
| Joseph L. Tehan, Jr. (BBO# 494020) | Austin M. Joyce (BBO #255040) |
| Gregg J. Corbo (BBO #641459) | Edward P. Reardon, P.C. |
| Kopelman and Paige, P.C. | 397 Grove Street |
| 31 St. James Avenue | Worcester, MA |
| Boston, MA 02116 | (508) 754-7285 |
| (617) 556-0007 | |

245112/60700/0499