UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO 03-CV-12249-DPW

| | |
|---|---|
| DONALD A. BRISSON,<br><br>    Plaintiff<br><br>v.<br><br>CITY OF NEW BEDFORD and NED K. LEDUC,<br><br>    Defendants | DEFENDANTS' JOINT LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT |

1.  The plaintiff Donald Brisson is an attorney licensed to practice law in the Commonwealth of Massachusetts (Deposition of Donald Brisson ("Brisson Depo"), p. 5, l. 4)[1]. The plaintiff's practice focuses on criminal defense work (Brisson Depo, p. 5, l. 6-9), and he teaches a course on criminal due process at the University of Massachusetts (Brisson Depo, p. 11, l. 10-11).

2.  On the morning of October 6, 2000, the plaintiff was representing Steven Furtado on a criminal matter pending in the New Bedford District Court (Brisson Depo, p. 21, l. 19-23). Mr. Furtado had been charged with operating a motor vehicle after suspension and a civil motor vehicle infraction (Brisson Depo, p. 21, l. 22-23). No other criminal charges were pending against Mr. Furtado at that time (Brisson Depo, p. 22, l. 22 – p. 23, l. 2).

3.  The night before Mr. Furtado's arraignment, the plaintiff was informed that Mr. Furtado was wanted by the Navy and that he was denied bail on that basis (Brisson Depo, p. 29, l. 15 – p. 30, l. 3). The plaintiff also acknowledged to the District Court during Mr. Furtado's arraignment

---

[1] Relevant portions of the transcript of the Deposition of Donald Brisson are attached hereto as "Exhibit A"

that Mr. Furtado was being held on a warrant from the Navy (Transcript of New Bedford District Court Proceedings (District Court Transcript), p. 3, l. 18 – p. 4, l. 9)[2].

4.  After a recess, the Court decided that it did not have jurisdiction to enforce the Navy's warrant, and ordered Mr. Furtado's release (District Court Transcript, p. 5, l. 17 – p. 6, l. 6).

5.  After resolution of Mr. Furtado's criminal matter, the plaintiff overheard Sgt. Conley of the New Bedford Police Department speaking with an assistant ADA about taking Mr. Furtado into custody based on correspondence from the Navy (Brisson Depo, p.27, l. 6-16).

6.  At that time, Sgt. Conley informed the plaintiff that Mr. Furtado was being taken into custody at the Navy's request.  There was no other reason for Mr. Furtado to be taken into custody at that time (Brisson Depo, p. 35, l. 2 – p. 36, l. 16).  During this conversation, Sgt. Conoly did not indicate any intention on the part of the New Bedford Police to question Mr. Furtado for any reason (Brisson Depo, p. 36, l. 17-21).

7.  Thereafter, Mr. Furtado was released from the Court into the custody of Sgt. Conley (Brisson Depo, p. 40, l. 10-13).

8.  After learning that Mr. Furtado was being taken to into custody by the New Bedford Police, the plaintiff proceeded to the Police Station on Rockdale Avenue (Brisson Depo, p. 44, l. 1-7).

9.  When the plaintiff arrived at the Station, he entered the building and went to the front desk (Brisson Depo, p. 44, l. 5-7).  Shortly after the plaintiff's arrival at the Station, four of Mr. Furtado's family members arrived in the entry area to the Station (Brisson Depo, p. 43, l. 3-7; p. 44, l. 8-10).

10. At that time, Officer Ned LeDuc (now retired) was on duty at the front desk of the police station at 871 Rockdale Avenue, New Bedford, Massachusetts (Affidavit of Ned LeDuc, ¶2)[3].

---

[2] Relevant portions of Transcript of New Bedford District Court Proceedings are attached hereto as "Exhibit B"

Case 1:03-cv-12249-DPW    Document 22    Filed 03/04/2005    Page 3 of 8

Officer LeDuc was sitting at a desk adjacent to the entry area of the Station, separated from the entry area by a wall and a plexiglass window (Affidavit of Ned LeDuc, ¶2).

11. As the desk officer, LeDuc was responsible for checking visitors into the station. Visitors were not permitted in any area beyond the entry area without approval from an officer of the Department. The entry area is separated from the remainder of the Station by a locked door. If an individual wished to enter the Station, LeDuc, in his capacity as desk officer, would inquire as to the purpose of their visit and contact the appropriate officer. LeDuc did not decide whether or not a particular visitor would be permitted to enter any other area of the Station (LeDuc Affidavit, ¶3).

12. Mr. Furtado was permitted to make several phone calls from the arraignment area of the Station (Complaint, ¶41). As the plaintiff entered the building, he received a telephone call from Mr. Furtado complaining that the police officers were asking him questions and asking him to sign documents (Brisson Depo, p. 44, l. 20 – p. 45, l. 4).

13. The plaintiff advised Mr. Furtado not to say anything or sign any documents (Brisson Depo, p. 45, l. 6-8).

14. At that point, the plaintiff approached Officer LeDuc and identified himself. The plaintiff also told Officer LeDuc that he represented Mr. Furtado and that he wanted to see him (Brisson Depo, p. 45, l. 10-12).

15. Officer LeDuc was not involved in the arrest or booking of Mr. Furtado (LeDuc Affidavit, ¶5). In response to the plaintiff's inquiry, Officer LeDuc contacted the sergeant in charge of booking (LeDuc Affidavit, ¶6; Brisson Depo, p. 45, l. 17-18). At that time, there were numerous other civilians in the entry area of the Station and other officers working in LeDuc's area (LeDuc Affidavit, ¶6).

---

[3] The Affidavit of Ned LeDuc is attached hereto as "Exhibit C"

3

16.     On October 6, 2000, Sgt. Kristofer Winterson was the Booking Supervisor and the Communications Supervisor for that shift (Affidavit of Kristofer Winterson ("Winterson Affidavit), ¶2)[4].  As the Booking Supervisor, Sgt. Winterson was responsible for overseeing the booking process for each arrestee by making sure that the charges match the offense, that the paper work is complete and that arrestee is prepared for transport (Winterson Affidavit, ¶2).

17.     As the Booking Supervisor, Sgt. Winterson was aware that Stephen Furtado was being booked after being taken into custody at the request of the United States Navy (Winterson Affidavit, ¶3).  There was no substantive interrogation of Mr. Furtado, nor was he aware of any reason for such an interrogation (Winterson Affidavit, ¶3).

18.     Sgt. Winterson was also aware that Mr. Furtado had been taken into custody at the New Bedford District Court and that Attorney Brisson was present at that time (Winterson Affidavit, ¶4).

19.     At approximately 1:30 p.m., Sgt. Winterson was called by Officer Ned LeDuc to come to the front desk.  Moments later, Sgt. Winterson came to the area next to the wating room and spoke with the plaintiff (Brisson Depo, p. 45, l. 20-23).  Upon arrival, Attorney Brisson immediately confronted Sgt. Winterson, demanding to see his client in an irate and excited manner.  Indeed, he was ranting and raving (Winterson Affidavit, ¶5).

20.     Despite being involved in the booking process for over seventeen years, Sgt. Winterson had never had to respond to a request by an attorney to see a client during the booking process, and he was not aware of any formal written policy of the Department addressing this issue.

---

[4] The affidavit of Kristofer Winterson is attached hereto as "Exhibit D"

21.     The New Bedford City Council, with the approval of the Mayor, has enacted Rules and Regulations of the New Bedford Police Department[5].  Pursuant to Section 202.2.17, the Council and the Mayor delegated to the Chief of Police the authority to "ensure that all property and facilities of the Department are properly utilized and maintained." (Exhibit 5).

22.     In the absence of a formal policy, Sgt. Winterson exercised his discretion under the circumstances of which he was aware.  In so doing, Sgt. Winterson did not view himself as establishing a general or overarching policy of the Department on the admission of attorneys, nor did he possess the authority to enact such a policy (Winterson Affidavit, ¶6).

23.     Sgt. Winterson told the plaintiff that he could not meet with Mr. Furtado at that Station (Complaint, ¶13). Sgt. Winterson made the decision to refuse entry to Attorney Brisson based on the circumstances known to him at that time.  Specifically, Sgt. Winterson decided that there was no need to allow a conference between Attorney Brisson and Mr. Furtado because Mr. Furtado was not being substantively interrogated and because Sgt. Winterson believed that Furtado and Brisson had had an opportunity to speak prior to Furtado's being taken into custody. Furthermore, Sgt. Winterson was aware of no designated area within the Police Station for attorney/client conferences, and he did not believe that the booking area of the Police Station was an appropriate location for an attorney/client meeting, particularly in light of Attorney Brisson's demeanor, i.e. he was a security risk (Winterson Affidavit, ¶7; Complaint, ¶13).

24.     Mr. Furtado was not substantively interrogated.  Mr. Furtado was asked to answer routine booking questions to complete the intake information form (Winterson Affidavit, ¶8, Exhibit 1). Mr. Furtado was asked to supply background information solely for identification purposes (Winterson Affidavit, ¶8, Exhibit 1).

---

[5]  A certified copy of relevant portions of the Rules and Regulations of the New Bedford Police Department are attached hereto as Exhibit E.

25.     Mr. Furtado was also asked to sign a City of New Bedford Police Department Suicide Questionaire and Record Checks form (Winterson Affidavit, ¶9, Exhibit 2).

26.     Based on the plaintiff's advice, Mr. Furtado refused to sign the form without his attorney being present (Winterson Affidavit, ¶9, Exhibit 2).

27.     Officer LeDuc overheard Sgt. Winterson tell the plaintiff that he could not meet with his client. The plaintiff raised his voice at Sgt. Winterson several times (LeDuc Affidavit, ¶7).

28.     After meeting with Sgt. Winterson, the plaintiff, in a raised voice, continued to ask Officer LeDuc if he could meet with his client. The plaintiff was loud, abusive and yelling, and Officer LeDuc could not conduct official police business with the plaintiff behaving in that manner. Specifically, the plaintiff's disruptive behavior prevented Officer LeDuc from addressing the needs of the other civilians in the entry area at the time, from completing paper work and from answering the phones (LeDuc Affidavit, ¶8). Even the plaintiff admits that he was "getting frustrated" and raising his voice (Brisson Depo, p. 49, l. 3-6; p. 53, l. 1-12). The plaintiff also requested that an officer superior to Sgt. Winterson be contacted (Brisson Depo, p. 53, l. 3-4; Complaint, ¶14).

29.     After receiving another phone call from Mr. Furtado, the plaintiff became increasingly frustrated and raised his voice even more than before (Brisson Depo, p. 58, l. 18 – p. 59, l. 3; p. 59, l. 15-17). The plaintiff persisted in speaking loudly and refused to back away from the glass after being asked to do so by Officer Claudia Sampson (LeDuc Affidavit, ¶9).

30.     According to the plaintiff, Officer Sampson told him to stand in the fucking corner, and he responded with "I ain't standing in no freaking corner for nobody." (Brisson Depo, p. 61, l. 20 – p. 62, l. 7; Complaint, 20)[6].

---

[6] This facts is undisputed for purposes of summary judgment only.

6

31.     At that point, the plaintiff was talking even louder.  At that point, Officer LeDuc entered the entry area and told the plaintiff to leave the Station or he would be arrested for trespass (LeDuc Affidavit, ¶9; Brisson Depo, p. 62, l. 12-13; p. 63, l. 22-23).  The plaintiff refused and LeDuc again told him to leave or he would be arrested (LeDuc Affidavit, ¶9; Brisson Depo, p. 64, l. 1-4, 20-23; p. 67, l. 18 – p. 68, l. 3).

32.     The plaintiff again refused to leave and Officer LeDuc placed him under arrest through verbal order.  Officer LeDuc did not use any force in arresting the plaintiff and did not handcuff him (LeDuc Affidavit, ¶10; Brisson Depo, p. 68, l. 15-23).  Indeed, LeDuc merely motioned for the plaintiff to follow him to an other area of the Station (Brisson Depo, p. 68-69).

33.     The plaintiff was escorted to the booking area where he spoke with Mr. Furtado.  At that time, Mr. Furtado confirmed that he was only being asked routine booking questions (Brisson Depo, p. 72, l. 6-17).  The plaintiff also confirmed that Mr. Furtado followed his advice and refused to sign the form that he was given (Brisson Depo, p. 73, l. 8).

34.     After going through the booking process himself, the plaintiff was transported to the New Bedford District Court, where he was arraigned and released (Brisson Depo, p. 77, l. 14-17; p. 80, l. 1-9).

35.     Subsequently, upon the plaintiff's request, the original complaint was dismissed and the Court scheduled a Show Cause hearing before a Clerk Magistrate.  After the Show Cause hearing, the Magistrate found probable cause to re-issue the complaint (Brisson Depo, p. 81, l. 1-20).  The charges against the plaintiff were dismissed prior to trial (Brisson Depo, p. 83, l. 2-7).

36. Mr. Furtado was released by the New Bedford Police, and was not charged with any crime (Brisson Depo, p. 78, l. 12-15).

37. At all times during this incident, LeDuc was acting in the good faith performance of his duties as a police officer for the City of New Bedford. As he had never met the plaintiff or his client, LeDuc harbored no animus or ill will towards them, and had nothing to gain by preventing them from meeting (LeDuc Affidavit, ¶11).

38. At all times during this incident, Winterson was acting in the good faith performance of his duties as a police officer for the City of New Bedford. As he had never met the plaintiff or his client, Winterson harbored no animus or ill will towards them, and had nothing to gain by preventing them from meeting (Winterson Affidavit, ¶10).

39. The plaintiff has not spoken with Mr. Furtado since a couple of days after his arrest (Brisson Depo, p. 20, l. 10-15). The plaintiff never spoke to Mr. Furtado about filing this lawsuit (Brisson Depo, p. 21, l. 6-8), and does not have his consent to talk about issues related to the representation (Brisson Depo, p. 25, l. 2-3).

40. The plaintiff has not suffered any quantifiable damages as a result of the events giving rise to this case (Brisson Depo, p. 84, l. 4-17), and does not claim that he has suffered any identifiable harm to his reputation (Brisson Depo, p. 84, l. 18 – p. 85, l. 3).

| DEFENDANTS<br>CITY OF NEW BEDFORD,<br>and NED LeDUC, | DEFENDANT<br>NED LeDUC |
|---|---|
| By their attorneys, | By his attorney, |
| s/ Gregg J. Corbo | s/ Austin M. Joyce |
| Joseph L. Tehan, Jr. (BBO# 494020)<br>Gregg J. Corbo (BBO #641459)<br>Kopelman and Paige, P.C.<br>31 St. James Avenue<br>Boston, MA 02116<br>(617) 556-0007 | Austin M. Joyce (BBO #255040)<br>Edward P. Reardon, P.C.<br>397 Grove Street<br>Worcester, MA<br>(508) 754-7285 |

244466/60700/0499